**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR421-159 |
| | ) | |
| JAMES DEON GREEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Defendant James Deon Green is charged with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1). Doc. 1 (Indictment). He has moved to suppress evidence seized during a search incident to his arrest for obstruction. Docs. 23 (motion) & 25 (brief in support). The government opposes his motion. Doc. 30. The Court held an evidentiary hearing on May 24, 2022. Doc. 38 (Minute Entry). Also before the Court are the Government's Notice Pursuant to Federal Rule of Evidence 404(b), doc. 22, the Defendant's opposition, doc. 27, the Defendant's Motion to Stipulate to Prior Felony Conviction, doc. 26, the Government's response, doc. 31, and the parties' Joint Stipulation and Status Report, doc. 42. These matters are all ripe for disposition.

## I.     MOTION TO SUPPRESS

### 1.     Factual Background

The charge against Green stems from a December 8, 2020, traffic stop initiated by Savannah Police Officer Travis Duncan, who testified during the hearing.  Doc. 38.  Duncan explained that he was patrolling in a marked police unit when he initiated a traffic stop on a green Crown Victoria for suspected illegal window tint.  When he activated his lights and siren the vehicle came to a stop.  As the vehicle pulled to the side of the street, the passenger, later identified as Green, opened the door and fled on foot.  Duncan did not call out to the passenger or chase him; instead, he stayed with the driver and radioed for backup.  Footage from Duncan's body worn camera was admitted into evidence.  *See* doc. 38-1 at 4, Government's Exhibit 1; doc. 38-1 at 1, Defendant's Exhibits 10, 11, & 12.

Officer Kyle Brown was a passenger in a marked police unit directly behind Duncan and witnessed the traffic stop.  *See* doc. 38-2 at 6-7.  He also testified during the hearing, doc. 38, and explained that he saw Duncan initiate the traffic stop, saw the car pull over, and saw the passenger—later identified as Green—open the door and run away.

2

Brown began to chase him but did not call out to him or tell him to stop because he was calling out directions to other officers. Brown, along with Officers Devin O'Neill and Dorothy Overholt, ultimately apprehended Green. Brown tackled him, placed him in handcuffs, and arrested him for obstruction. Brown explained Green's flight from the car was a crime since, as a passenger in the car subject to the traffic stop, he was detained and not free to leave. Brown did not search Green, but he identified O'Neill as the officer who conducted an initial pat down of the defendant. Footage from Brown's body worn camera was also admitted into evidence. *See* Government's Exhibit 2; *see also* Defendant's Exhibit 6.

Officer Dorothy Overholt also testified during the hearing. Doc. 38. She was the driver of the marked police unit directly behind Officer Duncan. Like her passenger Brown, she had a clear view of Duncan initiating the traffic stop, saw the car pull over, and the passenger flee. She chased him and told him to stop running at least once. She, along with Officers Brown and O'Neill, apprehended him. She witnessed Brown tackle him and place him under arrest for obstruction, and she witnessed O'Neill pat him down. That initial pat down did not reveal anything. Overholt then accompanied Green to the patrol vehicle where

her sergeant conducted a more thorough search.  The sergeant found a pistol in Green's waistband, which Overholt removed and secured. Overholt testified that, at the time Duncan initiated the traffic stop, Green was detained and not free to leave.  Therefore, she considered his flight from the car to be "obstruction," in violation of Georgia law.

Officer Devin O'Neill also testified during the hearing.  Doc. 38.  He confronted Green at the end of Brown's chase and yelled out to Green to get down.  Shortly thereafter, Green was tackled by Brown.  O'Neill conducted an initial pat down of Green after he was handcuffed but did not find a weapon or other contraband.  At that point, he understood Green to be under arrest for his flight from the vehicle that had been the subject of the traffic stop.  Footage from his body worn camera was also admitted into evidence.  *See* Defendant's Exhibit 15.

### 2.   Analysis

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  In most circumstances, unless there is consent, law enforcement officers must obtain a warrant supported by probable cause to justify a search under the Fourth

Amendment.  *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). There are, however, exceptions to the warrant requirement.  *Id.* The government has the burden of showing that the warrantless search falls within a recognized exception.  *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

A full search incident to a lawful arrest is an exception to the warrant requirement. *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002) ("Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification."). "The 'reasonableness of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause.'"  *United States v. Lopez-Garcia*, 565 F.3d 1306, 1314 (11th Cir. 2009) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009)).  "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (internal citation and quotation marks omitted).

Green concedes that a search incident to lawful arrest is an exception to the warrant requirement but argues that his arrest was not based on probable cause.  Doc. 25 at 5-10.  The Government responds that Green's flight from the car, which was itself lawfully stopped, gave the officers probable cause to arrest him for obstruction.  *See* doc. 30 at 6. Green does not challenge the basis for Officer Duncan's initial traffic stop.  *See generally* doc. 25.  Instead, he argues that despite the lawful traffic stop, his encounter with the officers "was a first-tier encounter that he was free to leave by any legal means," *id.* at 8, and that he did not commit misdemeanor obstruction "simply by running from law enforcement."  *Id.* at 6.  The dispositive issue, then, is whether Green's immediate flight from a vehicle stopped by law enforcement supplied the officers with sufficient probable cause for his arrest.

The officers all testified that Green was arrested for violation of Georgia's misdemeanor obstruction statute, which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."  O.C.G.A. § 16-10-24(a).  Georgia courts, following *Terry v. Ohio*, 392 U.S. 1 (1968), have identified three

types of police-citizen encounters: a verbal communication that involves no coercion or detention (a "first-tier encounter"), a brief stop or seizure that must be accompanied by a reasonable suspicion (a "second-tier encounter"), and an arrest. *Johnson v. State*, 869 S.E.2d 177, 181 (Ga. Ct. App. 2022). Citizens retain the ability to walk away from a first-tier encounter, and exercise of that right does not constitute obstruction. *State v. Stafford*, 653 S.E.2d 750, 755 (Ga. Ct. App. 2007). Flight from a second-tier encounter, however, provides probable cause for an arrest for obstruction. *Id.*

Georgia case law, consistent with *Terry* and its progeny, clearly provides that "[a]n investigative stop of a vehicle is a second tier encounter, and the suspect does not have the right to flee from the encounter or decline to stop." *Stafford*, 653 S.E.2d at 755; *see also Veal v. State*, 487 S.E.2d 696, 697 (Ga. Ct. App. 1997) (vehicle's flight from police apprehension supports an obstruction charge); *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (a traffic stop is a seizure within the meaning of the Fourth Amendment and its legality is analyzed under the standard articulated in *Terry*). Georgia courts have also recognized that during a traffic stop "not only the driver of the stopped

7

vehicle but also any passengers are detained during the stop and are considered 'seized' within the meaning of the Fourth Amendment." *State v. McMichael*, 624 S.E.2d 212, 217 (Ga. Ct. App. 2005). Even though, in dicta, the Georgia Court of Appeals has indicated that initial contact between officers and a passenger might be "a police-citizen encounter involving no restraint," *Tuggle v. State*, 512 S.E.2d 650, 652 (Ga. Ct. App. 1999), in that same opinion it also recognized that officers are authorized to request that a passenger remain in the car until their investigation is complete, *id.* at 652, n.1. Subsequent cases have made it clear that passengers in a stopped vehicle are detained during the stop. *State v. Williams*, 590 S.E.2d 151, 153-54 (Ga. Ct. App. 2003); *see also Brendlin v. California*, 551 U.S. 249, 255-58 (2007) (considering passenger seized during a traffic stop).

Here, Officers Brown and Overholt witnessed Officer Duncan initiate his lights and sirens and stop the vehicle in which Green was a passenger. At that point, consistent with Georgia law, the vehicle and its occupants were all detained. *Williams*, 590 S.E.2d at 153-54. Brown and Overholt then witnessed Green immediately open the door and flee from the scene. At that point, they had probable cause to believe that

8

Green had unlawfully fled from a second-tier encounter in violation of Georgia's obstruction law.  Green's case is distinguishable from those he relies on, where officers did not have probable cause to arrest individuals for obstruction when they fled after officers approached them.  *See, e.g., State v. Dukes* 630 S.E.2d 847 (Ga. Ct. App. 2006); *Ewumi v. State*, 727 S.E.2d 257 (Ga. App. 2012).  He argues that his encounter, like those  in *Dukes* and *Ewumi*, was a "first-tier encounter that he was free to leave by any legal means."  Doc. 25 at 8.  However, as a passenger in a car that had been seized pursuant to a lawful traffic stop, he was not free to flee the scene; he was detained.

Even if the passenger's flight from the traffic stop did not supply the requisite probable cause for the arrest for obstruction under Georgia law, the officers were objectively reasonable in their belief that it did. "Courts apply a reasonableness standard to Fourth Amendment issues, which allows for some mistakes of both fact and law on the part of government officials." *United States v. Scott*, 693 F. App'x 835, 836 (11th Cir. 2017) (citing *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014)). Considering the Court's own analysis above, the officers' belief that Green was not free to unilaterally terminate his encounter with the police

that evening, even if mistaken, would have been   an "objectively
reasonable mistake of law." *United States v. McCullough*, 851 F.3d 1194,
1201 (11th Cir. 2017) (internal quotes omitted).

The Government has carried its burden of demonstrating that
Green was lawfully searched incident to an arrest supported by probable
cause.  Green's motion to suppress should be **DENIED**.  Doc. 23.

## II.   GREEN'S PRIOR CONVICTION

### 1.   Background

The Government filed a notice pursuant to Federal Rules of
Evidence 404(b) and 609 that it intends to introduce evidence of Green's
2006 Georgia state conviction for possession of a firearm by a convicted
felon.  Doc. 22.  It argues that the prior conviction is "probative of intent,
knowledge, motive, and absence of mistake," and that its probative value
outweighs the danger of unfair prejudice.  *Id.* at 2.  It asserts that the
"prior conviction constitutes extrinsic evidence involving similar
elements and state of mind as the offense alleged," and is therefore
relevant to an issue other than character.  *Id.*  It also suggests that it
intends to cross-examine the defendant about the prior conviction
pursuant to Rule 609(a) should he testify.  *Id.*  The defendant responds

that the 2006 conviction is improper character evidence not allowable under Rule 404(b), is too remote for purposes of Rule 609, and is unfairly prejudicial as contemplated by Rule 403.  Doc. 27.

At trial, the Government must prove, among other things, that at the time of the conduct underlying the charge Green was a felon and knew that he was a felon.  *See, e.g.*, 28 U.S.C. §922(g)(1); *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019).  The defendant has entered into the following stipulation with the Government:

> The parties stipulate that on December 8, 2020, James Deon Green had been convicted of a felony offense—a crime punishable by imprisonment for more than one year; and knew that he had previously been convicted of a felony.

Doc. 42 at 1.  Therefore, defendant moves pursuant to *Old Chief v. United States*, 519 U.S. 172, 174 (1997), that the Government be prohibited from introducing evidence of the prior felony, including disclosing the name or nature of the offense.  Doc. 26.  The Government "has no objection" to Defendant's motion.  Doc. 31.  That non-opposition notwithstanding, the parties have clarified that, despite the stipulation, they "have been unable to come to an agreement" as to the Government's Rule 404(b) notice, and therefore "request a ruling from this Court about whether

[the prior conviction] is admissible in the Government's case-in-chief according to the Federal Rules of Evidence." Doc. 42 at 1.

**2.   Analysis**

Extrinsic evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. The Eleventh Circuit has set out the test to apply when considering a defendant's prior bad acts under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

*United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992)). Here, only the first and third prongs of the test are contested.

First, the Court will discuss the impact of the stipulation on its analysis. As discussed above, the Government must prove that the defendant knew he was a convicted felon. *Rehaif*, 139 S. Ct. at 2195–96. The parties' agreed-upon stipulation, doc. 42 at 1, precludes the Government from offering his prior conviction to prove that element. *Old Chief*, 519 U.S. at 188–90; *see also United States v. Perpall*, 856 F. App'x 796, 798 (11th Cir. 2021) ("[I]f a defendant stipulates to knowing that he is a convicted felon, the government cannot offer evidence of his prior convictions to prove that element."). However, the Government must also prove that the defendant knowingly possessed a firearm. *See United States v. Pierre-Louis*, 860 F. App'x 625, 634 (11th Cir. 2021) (citing *Rehaif*, 139 S. Ct. at 2200). By pleading not guilty, Green has placed that element at issue. *Id.* (citing *Jernigan*, 341 F.3d at 1281, n.7). The stipulation does not speak to whether he knowingly possessed a firearm, therefore, it "does no work here," and the standard Rule 404(b) analysis controls. *Perpall*, 856 F. App'x at 798; *see also United States v. Taylor*, 17 F.3d 333, 339 (11th Cir. 1994) (offer to stipulate as to intent "did not remove all the issues the government sought to prove," so district court did not abuse discretion in admitting the prior conviction).

13

As to the first element of that standard analysis, the prior conviction must be relevant to an issue other than the defendant's character. *Jernigan*, 341 F.3d at 1280. The Government's notice suggests that it will offer the prior conviction to prove intent, knowledge, motive, and absence of mistake. Doc. 22 at 2. As it, albeit succinctly, points out, the prior conviction involves "similar elements and state of mind as the offense alleged" in this case. *Id.* The defendant explains, however, that the Government's case against him is one of alleged actual possession of a firearm. *See* doc. 27 at 7. In cases where the Government's case rests on alleged *constructive* possession of a firearm, prior convictions for similar violations are relevant. *Perpall*, 856 F. App'x at 799. To say otherwise would be "untenable." *Id.* (quoting *Jernigan*, 341 F.23d at 1281. But the Eleventh Circuit has not "reach[ed] the question of whether similar evidence would be relevant to knowledge or intent in an 'actual possession' case." *Id.* at 799, n.1. It has not foreclosed the possibility, but other Circuits have. *See, e.g.*, *United States v. Williams*, 620 F.3d 483, 489 (5th Cir. 2010) ("In the context of a weapon-possession case, Rule 404(b) evidence of intent is relevant to a theory of constructive possession, but not to a theory of actual possession.").

The Government's notice does not clearly explain how the prior conviction, over a decade old, is relevant to an issue in dispute. *See* doc. 22. Notably, although the Government has pushed the issue of the admissibility of the Rule 404(b) evidence despite the stipulation, *see* doc. 42, it has not responded to the defendant's opposition to its Rule 404(b) notice. *See generally* docket; *see also* doc. 42 at 1, n.1 (identifying only the Government's notice and Green's opposition as the relevant briefing on the issue). The Court is left to infer what possible theory of relevancy might still exist. To the extent the Government contends the prior conviction is relevant to prove knowledge or intent, that theory of relevancy in this actual possession case is thin, at best. Against that minimal probative value, the likely prejudice to the defendant from admitting the prior conviction weighs in favor of exclusion. *See United States v. Mathis*, 519 F. App'x 643, 646 (11th Cir. 2013) ("Where the government has a strong case as to intent without the extrinsic evidence . . . the prejudice to the defendant may outweigh the marginal value of the admission of the extrinsic evidence, such that the offense should be excluded.").

The Government also asserts that it will seek to cross-examine the defendant regarding the 2006 conviction should he elect to testify at trial. Doc. 22 at 2.  Where a prior conviction is more than ten years old, the Federal Rules of Evidence create "a presumption against admissibility" for purposes of impeachment. *United States v. Young*, 574 F. App'x 896, 898 (11th Cir. 2014) (citing Federal Rule of Evidence 609(b)).  Rule 609(b) applies here, where the defendant has presented evidence that he was released from confinement "in 2007 at the very latest."  Doc. 27 at 9 (citing doc. 27-2 (2006 judgment)).  Therefore, the prior conviction is only admissible for impeachment purposes if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).  The Government's notice does not support its assertion of probative value for impeachment with any "specific facts and circumstances" justifying its use of the remote prior conviction. *See* doc. 22.

For the foregoing reasons, the defendant's Motion *in Limine* is **GRANTED**.  Doc. 26.  The Government may not introduce the prior conviction to prove either that the defendant was a felon at the time of the conduct underlying the charge, or that the defendant knew he was a

felon at that time.  The defendant's objections to the Government's Notice pursuant to Rules 404(b) and 609 are **SUSTAINED**.  Doc. 27.  Based on the articulated theories of relevancy in the Government's notice, the prior conviction is excluded.  However, at trial, the Government may again seek to admit the prior conviction should it believe it can provide a stronger argument for its relevancy.  *Cf. Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." (citation omitted)).

## III.  CONCLUSION

Green's Motion to Suppress should be **DENIED**.  Doc. 23. Defendant's Motion in Limine is **GRANTED**.  Doc. 26.  The Defendant's objections to the Government's Notice Pursuant to Rule 404(b) are **SUSTAINED**.  Doc. 27.  The Government is not foreclosed from seeking the admission of the prior conviction at trial, subject to its ability to demonstrate a stronger theory of relevancy.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this

R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 23rd day of June, 2022.

Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia